CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

8/27/2024
LAURA A. AUSTIN, CLERK
BY   s/ S. MELVIN
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| **LAURA BERL and SETH BERL, individually and on behalf of all others similarly situated,** | **Civil Action No.** 3:24-cv-00066 |
| **Plaintiff,** | |
| **v.** | |
| **BMW OF NORTH AMERICA, LLC,** | |
| **Defendant.** | **Demand for Jury Trial** |

## CLASS ACTION COMPLAINT

1.    Plaintiffs Laura Berl and Seth Berl (collectively, "Plaintiffs"), by and through counsel, brings this Class Action Complaint against Defendant BMW of North America, LLC ("Defendant" or "BMW"), individually and on behalf of all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

### I.    NATURE OF THE CASE

2.    Plaintiff brings this case individually and on behalf of all similarly situated persons residing in Virginia ("Class Members") who purchased or leased a BMW vehicle equipped with a powertrain with the rollaway defect ("Rollaway Defect") that was designed, manufactured, distributed, advertised, marketed, sold, and/or leased by Defendant or Defendant's parent, subsidiary, or affiliates.

3.    Defendant designed, manufactured, distributed, advertised, marketed, sold, and/or leased BMW X1 vehicles equipped with the Rollaway Defect from at least 2023 to present in Virginia ("Class Vehicles" or "Vehicles").

4.      On information and belief, there are multiple BMW models equipped with this defect and Plaintiff reserves the right to amend the complaint by expanding the Class Vehicle classification.

5.      The BMW X1 xDrive28i is equipped with a 2.0-liter twin-turbocharged engine paired with a 7-speed DCT Steptronic transmission. This transmission features fully electromechanical gearshift actuation and electrohydraulic dual-clutch engagement. Despite its advanced design, the DCT has exhibited several operational deficiencies, particularly at low speeds and during transitions between drive, neutral, and reverse gears.

6.      Defendant knew its vehicles contained one or more design and/or manufacturing defects, including but not limited to the Rollaway Defect which causes BMW models to roll in a direction opposite of the gear that is selected on a slight incline/decline or uneven road surface, and fail to respond to reasonable throttle input.

7.      An automatic transmission is essentially an automatic gear shifter. Instead of manually shifting the gears with a clutch, the automatic transmission shifts gears on its own. The transmission acts as a powertrain to convert the engine's force into a controlled source of power. Accordingly, drivers need a properly functioning automatic transmission to accelerate and decelerate their Vehicles safely and reliably.

8.      The Rollaway Defect, a common design and/or manufacturing defect in BMW powertrains, is a potentially life-threatening safety issue, and BMW has refused to recall and replace the defective powertrains.

9.      On information and belief, possible reasons for the Rollaway Defect include defective electrohydraulic actuation of the dual clutches at low speeds, potentially due to malfunctioning valves, sensors, pistons, and/or other components. Additionally, this defect may

result from inappropriate interaction between the engine, transmission, and brake software, leading to insufficient algorithms and safety thresholds. Calibration deficits, such as improper throttle characteristics and dual clutch apply patterns, are also implicated. Furthermore, mechanical defects in dual-clutch parts, including manufacturer flaws, leaking seals, and uneven pistons, may contribute to the rollaway issues.

10.    The Rollaway Defect in the subject vehicle manifests through various hazardous symptoms, which significantly impair its safety and operability. These symptoms collectively endanger the driver, passengers, pedestrians, other road users, and property. This complaint details the specific manifestations of the Rollaway Defect and the associated risks.

11.    One of the primary symptoms of the Rollaway Defect is a pronounced delay in acceleration. Specifically, from a dead stop, there is a delay of 2 to 7 seconds when the gas pedal is pressed in any gear, including reverse. This delay severely impairs the driver's ability to control the vehicle's, acceleration, speed, and responsiveness.

12.    Such impairment is particularly dangerous in situations requiring immediate acceleration, such as parking, merging into traffic, navigating intersections, or avoiding sudden obstacles. The inability to promptly accelerate compromises the driver's capacity to respond to dynamic driving conditions, thus increasing the likelihood of causing or avoiding collisions and accidents.

13.    Another critical manifestation of the Rollaway Defect is the vehicle's tendency to jerk forward unexpectedly. This sudden and unanticipated movement can lead to a loss of control, posing a significant risk of collisions, particularly in congested or urban driving environments. The unpredictable nature of this jerking motion exacerbates the hazard, as it can catch the driver off

guard, cause a detrimental driver intuitive reflex response, and reduce their ability to maintain safe vehicle operation.

14.     Additionally, the Rollaway Defect causes the vehicle to roll forward or backward randomly while in gear and awaiting clutch engagement. This uncontrolled rolling is particularly hazardous when the vehicle is stationary but in gear, as it can move unpredictably opposite to the selected drive gear. Such movement poses a threat to pedestrians, other vehicles, property, and the driver, especially on inclines and uneven surfaces. The risk of unintended vehicle movement exacerbates the potential for accidents and injuries or death, highlighting the severe safety implications of this defect.

15.     The Rollaway Defect also causes the vehicle to roll on graded services in the direction of the grade independent of the selected drive gear and throttle input. This symptom lasts for an unpredictable amount of time.

16.     The symptoms described above collectively compromise the vehicle's safety and operability. The combination of delayed acceleration, unexpected jerking, throttle response issues, and uncontrolled rolling in the direction or opposite direction of the gear selected, creates a driving environment fraught with hazards. These defects undermine the fundamental safety features expected of any vehicle, placing all road users, pedestrians, and property at risk. It is imperative to address and rectify these issues to ensure the vehicle's safe and reliable operation.

17.     Prior to purchasing or leasing Class Vehicles, Plaintiff and other Class Members did not know or have reason to know that the Class Vehicles would have the Rollaway Defect.

18.     Upon information and belief, Plaintiff alleges that Defendant knew or should have known that the Class Vehicles were and are defective, suffer from the Rollaway Defect, and are not fit for their intended purpose of providing consumers with safe and reliable transportation.

Nevertheless, Defendant failed to disclose this defect to Plaintiff and Class Members at the time of purchase or lease, or thereafter.

19.    Had Plaintiff and Class Members known about the Rollaway Defect at the time of sale or lease, as well as the associated costs related to the Rollaway Defect, Plaintiff and the Class Members would not have purchased the Class Vehicles and would have chosen a different model with no rollaway defect.

20.    As a result of their reliance on Defendant's omissions and/or misrepresentations, Plaintiff, and other owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

21.    The first priority of an auto manufacturer should be to ensure that its vehicles are safe and operate as intended to prevent or minimize the threat of death or serious bodily harm. In addition, an auto manufacturer must take all reasonable steps to ensure that, once a vehicle is running, it operates safely and its mechanical systems (such as the transmission) work properly. Moreover, an auto manufacturer that is aware of dangerous design defects that cause its vehicles to move without operator intention must not put the vehicle into commerce and must immediately recall all vehicles that have already been sold.

22.    This case arises from Defendant's breach of its obligations and duties, including Defendant's omissions and failure to disclose that, as a result of the Rollaway Defect, Class Vehicles will roll in a direction opposite of the gear that is selected on a slight incline/decline or uneven road surface, and exhibit delayed acceleration when needed.

23.    To the extent warranted by the developing facts, Plaintiff will further supplement the list of Class Vehicles to include additional BMW vehicles that have the Rollaway Defect.

24.     The Rollaway Defect makes Class Vehicles unreasonably dangerous. Because of the Defect, Class Vehicles are likely to suffer serious damage and potentially cause accidents, and there is an unreasonable and extreme risk of serious bodily harm or death to the occupants and others in the vicinity.

## II.     PARTIES

25.     Plaintiffs Laura and Seth Berl are husband and wife and are Virginia citizens who live in Charlottesville, Virginia. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by BMW of North America, LLC.

26.     Defendant BMW of North America, LLC is a limited liability company organized under the laws of the State of Delaware with CT Corporation System, 4701 Cox Rd Ste 285, Glen Allen, VA, 23060 as its registered agent in Virginia. BMW's principal place of business is at 300 Chestnut Ridge Road, Woodcliff Lake, NJ 07677.

27.     BMW, through its various entities, designs, manufactures, advertises, markets, distributes, and sells and/or leases its vehicles in this District and many other locations in the United States and worldwide. BMW and/or its agents designed, manufactured, and installed the BMW transmissions in the Class Vehicles. BMW also developed and disseminated the owner's manuals, warranty booklets, advertisements, and other promotional materials pertaining to Class Vehicles.

## III.     JURISDICTION AND VENUE

28.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and Plaintiff and Class Members are citizens of states different from Defendant.

29.     The Court has personal jurisdiction over BMW because, through its business of distributing, selling, and leasing the Class Vehicles in this District, BMW has established sufficient contacts in this District such that personal jurisdiction is appropriate.

30.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Venue is proper in this Division under L.R. 2(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Division.  Specifically, Plaintiff purchased their Vehicle, used their Vehicle, experienced the symptoms and malfunctions in their Vehicle which underlies his claims, and had their Vehicles serviced by authorized BMW dealerships in this District and Division.

## FACTUAL ALLEGATIONS

### IV.     THE NATURE OF THE DEFECT

31.     BMW has designed, manufactured, distributed, advertised, marketed, sold, and/or leased its vehicles for years, including its X1 models.

32.     BMW has touted the superiority and class of its vehicles, particularly in the quality and safety of its engineering.

33.     In terms of safety, BMW states that the X1 is a true leader in safety with the most advanced safety features and onboard driving technology.



SAFETY & TECHNOLOGY
A TRUE LEADER
The most advanced safety features and onboard driving technology come standard in the BMW X1. All you need to do is take the wheel.

34.     BMW further highlights its "most advanced safety features. The BMW X1 comes standard with Active Driving Assistant, which includes multiple safety systems like Frontal

Collision Warning with City Collision Mitigation, Lane Departure Warning, and Active Blind Spot
Detection to provide extra protection for you and your passengers on the road."



35.    BMW further claims that the X1 is "One step ahead. The BMW X1 goes above
and beyond to keep you and your passengers protected with safety features including standard
Active Blind Spot Detection, Frontal Collision Warning with City Collision Mitigation, and Lane
Departure Warning."[1]

36.    BMW's X1, "comes with xDrive, BMW's intelligent all-wheel drive system,
equipped as standard. This technology powers all four wheels, and automatically counteracts slip
in reduced traction areas for a more controlled driving experience."[2]

37.    BMW's X1 is equipped with a 7-speed automatic dual clutch transmission on both
X1 models, the M35i and xDrive28i.

---

[1] https://www.bmwusa.com/future-vehicles/x1-luxury-sav.html/1000 (last accessed on Aug. 27,
2024).
[2]    https://www.bmwusa.com/vehicles/x-models/x1/suv/overview.html#performance    (last
accessed on May 30, 2024).

**PERFORMANCE**

# PACK A PUNCH

A 2.0-liter BMW TwinPower Turbo inline 4-cylinder engine drives the
BMW X1, turning out 241 horsepower. In the new X1 M35i, the 2.0-liter
BMW M TwinPower Turbo inline 4-cylinder engine yields 313
horsepower. Shift smoothly with the 7-speed automatic dual clutch
transmission, standard on both models.

38.    BMW also offers extended warranty coverage for multi-coverage protection for
seven years or 100,000 miles, whichever occurs first. This extended warranty coverage includes
the transmission and all internal parts, clutch cover, seals and gaskets, torque converter, transfer
case (including all internal parts), transmission case, and transmission mounts.[3]

### Vehicle Service Contracts (VSC)

Coverage for your BMW should go above and beyond. VSC expands the coverage of your vehicle for up to 7 years, or 100,000
miles, and offers options to customize the level of protection needed. In addition, BMW guarantees unmatched quality of care
with all repairs completed with 100% Original BMW parts at an authorized repair facility. ⓘ

Obligor: BMW of North America, LLC
300 Chestnut Ridge Road Woodcliff
Lake, NJ 07677-7731, 800-831-1117.

39.    The levels of coverage include the Platinum or Powertrain Warranty.

**Platinum** ⓘ

Available for New, Pre-Owned, Plug-In Hybrid, Electric, and Certified Pre-Owned Vehicles

Comprehensive coverage for most major components and exclusive protection offerings.

**Powertrain**

Available for New, Pre-Owned, and High Mileage Vehicles

Extensive coverage of many drivetrain components and limited coverage for many other parts.

40.    As a result of the Rollaway Defect, and the malfunctions it causes in the Vehicles,
Class Members have stated that they do not feel safe driving the Class Vehicles in normal traffic
conditions.

41.    BMW has internally identified and acknowledged the Rollaway Defect and
ascertained that the root cause is unfavorable engine and transmission calibration.

---

[3] https://www.bmwusa.com/financial-services/protection-program.html (last viewed May 30th,
2024)

## V.    PLAINTIFF'S EXPERIENCE

A.    <u>Plaintiff Seth and Laura Berl</u>

42.    Seth Berl was shopping for a safe and reliable vehicle for his newlywed wife, Laura. Seth recommended that they purchase the newly released 2023 BMW X1 xDrive28i, including all safety features inclusive of the Driver's Assistance Professional package. In reliance on this expectation, Seth and Laura sold Laura's very reliable 7-year-old Subaru Crosstrek, which had never experienced any problems beyond routine maintenance, one day before taking possession of the new BMW.

43.    At the time of Seth and Laura's purchase, BMW knew that its 2023 BMW X1 xDrive28i vehicles had the Rollaway Defect, which by its nature is dangerous. However, neither BMW nor the BMW sales representative disclosed this defect to Seth and Laura when advertising or discussing the features, components, and performance of the vehicle prior to its sale. In reliance on these material omissions and misrepresentations, Seth and Laura purchased and operated the vehicle on the belief that it would perform properly and safely as warranted.

44.    Neither BMW nor any of its agents, dealers, or representatives informed Seth and Laura of the Rollaway Defect prior to their purchase of the vehicle.

45.    Just three days after taking delivery of the vehicle, Seth and Laura noticed the BMW X1 exhibited a dangerous rollaway tendency.

46.    On September 19, 2023, with only 30 miles on the odometer, Seth brought the vehicle to BMW of Charlottesville for service. The dealership performed a software update and dual clutch recalibration, but the issue persisted.

47.    Over the next several months, Seth and Laura continued to experience rollaway episodes at a rate of about 2-3 times per week, posing a significant safety risk.

48.    On December 7, 2023, with approximately 900 miles on the vehicle, they returned to the dealership for a second service visit. Despite another software update, the Rollaway Defect was not resolved.

49.    On December 16, 2023, Seth and Laura returned the vehicle to the dealership for a third time, providing both sets of keys and expressing their intention to no longer take or retain possession of the defective vehicle. They expected BMW to either refund them completely or provide a different model replacement vehicle with the same or better safety features. Despite these efforts, the rollaway issue remained unresolved, the vehicle has been at the dealership for over 240 days and remains at the dealership as of the filing of this complaint.

50.    One of the loaner vehicles provided to Plaintiffs exhibited the Rollaway Defect, as documented in two videos.

51.    Seth and Laura did not receive the benefit of their bargain. The defective BMW X1 xDrive28i has caused them significant distress, inconvenience, and safety concerns, and they continue to await a favorable resolution from BMW.

## VI.    CLASS ACTION ALLEGATIONS

A.    <u>Class Members</u>

52.    Class Members are at least in the hundreds and have experienced similar problems with their Class Vehicles as a result of the Rollaway Defect. Numerous complaints have been made to NHTSA, BMW dealerships, and through online forums by other BMW owners who have experienced the Rollaway Defect. These complaints include descriptions of the vehicle rolling unexpectedly while in gear (many times in the opposite direction), delays in acceleration, and sudden jerking movements. Despite these widespread reports, BMW has not taken sufficient action to remedy the defect or to adequately inform consumers about the potential dangers associated with their vehicles before and after purchase. As a result, Class Members, like the Plaintiffs, have

been deprived of the safe and reliable transportation they were promised and have suffered

financial loss, inconvenience, emotional distress, and safety concerns.

53.     An examination of NHTSA complaints illustrates the Class Members' experiences

with the Rollaway Defect and its potential danger (note that spelling and grammar mistakes remain

as found in the original).

NHTSA Complaint dated March 1, 2024: The auto start/stop on this car is super
slow and will turn off the engine before the car comes to a complete stop. It causes
confusion at intersections because of the slow getaway and has nearly caused
several collisions. For instance, last week I was turning left at an intersection. The
left turn was a yield, so i am turning across oncoming traffic. This is the usual
intersection in my city. I did not come to a complete stop and started to turn left. I
left plenty of space to the oncoming traffic. To my surprise, the engine had turned
off and I sat in the intersection pressing the gas pedal to no power. I essentially
coasted most of the way through the intersection before the power came back. By
that point, I was pushing the gas so hard that when the engine started, I nearly lost
control because of the sudden jolt of acceleration while turning. This has happened
multiple times and puts drivers of the X1 and others at risk. I've owned and driven
hundreds of cars with auto start/stop and this has to be the worst by far. I cannot
understand why the engine will turn off before the car comes to a stop. This is more
typical of a mild-hybrid drivetrain, except this car does not have an electric engine.
It happens with no consistency, so there's no way to adapt driving style. There is
only one way to disable the start/stop, and it's deep within the menus (several button
clicks on a touch screen-only display), and then it only disables it for the current
trip. The dealer has mentioned it's not great but has no way to fix as it's a software
problem. Zero warning lamps. (ID No. 1975151)

NHTSA Complaint dated October 26, 2023: The car has a serious turbo lag. When
I stepped on the gas it would take a few seconds for the car to move. I was very
nervous driving it, as it was difficult to judge when I could enter or cross a stream
of traffic safely. This is a serious safety issue. The dealership offered to come to
my home with a loaner and have one of their employees accompany me while I
drove the car to illustrate the issue. The person readily agreed several times there
was an issue in the way the turbo or transmission was functioning. He loaded the
car on the flatbread to the dealership and left me with a loaner. After checking out
the issue with my brand new car the dealer agreed it was a problem. They said they
would check for a software update, which they did and installed it. They held it
again overnight to test it the next day after the software update. The service manager
advised that the software update did not fix the issue, and BMW told them that the
car was designed to work that way. After hearing this I looked online for people
with the same issue, and I readily found several examples including a person that
regularly reviews new cars in video and said the turbo lag was dangerous and he

would not be surprised if there was a recall in the future. How can the service department see a problem and the manufacturer say it was designed to work that way? If so, customer should be advised, hey when you step on the gas the car may not move for a few seconds! (ID No. 11559766)

NHTSA Complaint dated October 26, 2023: This vehicle has on numerous times has had delayed acceleration from a stop or rolling stop. The hesitation is random and unpredictable. The vehicle will be unresponsive for a second or two and then a surge of acceleration will jolt the vehicle forward. This causes an unsafe situation in which defensive maneuvering can be delayed. Accelerating from a stop sign or traffic light can become dangerous due to the significant lag between stepping on the gas pedal and the movement of the vehicle. (ID No. 1938330)

NHTSA Complaint dated April 1, 2023: Email sent to BMW describing a hesitancy or delay on acceleration from a dead stop: I have attached a link below to a blog from January, 2023, describing this problem on 2023 BMW X1; it includes a description of the issue on a video review of this car by Consumers Report. Apparently, this has not been corrected. My new 2023 X1 has this significant and dangerous problem. I was at the dealer service department for 2 1/2 hours this morning and they claimed not to be aware of the problem, although the technician did recognize the hesitancy. They also had no repair or correction from BMW. That is inexcusable. A second delay on accelerating from a stop making a turn onto or merging onto a highway, could result in a collision. I assume that BMW is waiting for enough reports of that happening before doing something about it. I am not interested in explanations or excuses. I assume the it is due to the engine stop/start mechanism. I want it corrected. I am leaving on a road trip in 2 weeks and am afraid to take this car on the trip. I realize that if I turn off the stop/start mechanism on each startup or drive in Sport mode, and the hesitancy does not occur. That is not an acceptable alternative for a $58,000, BMW X1, especially for a recognized defect in the car's manufacture or software that has been known for at least 10 months. I need to have it fixed. [XXX] cc: California Department of Consumer Affairs INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) (ID No. 1932514)

NHTSA Complaint dated May 17, 2023: This report is for a 2023 BMW x1 with a dual clutch transmission. I was driving on a four lane road with a 35 mph speed limit and attempting to make a left turn. I was stopped at the light waiting the oncoming traffic to clear to make the left turn (from the left most of the two lanes). There was a significant delay in the car moving after pressing the accelerator allowing for the oncoming traffic to get within a dangerous range before the car finally moved. The car did make the left turn quickly, but the delay in initiating the turn was quite notable. The care was in the "Personal" drive mode and the auto hold function was not activated, nor was the auto off engaged when stopped. I don't use the paddle shifters and the car was in Drive. The engine was running when the accelerator was pressed. I have noticed this delay to accelerate at other times with the car is in first gear (moving from a slowed or stopped position), but I have not

yet reported to the dealer (but have seen discussion of this issue on online owners forums). The delay doesn't happen when the car is moving or beyond first gear. Acceleration is not impacted once out of first gear. (ID No. 11529795)

54.     Plaintiffs bring this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

55.     The Class is defined as:

All persons residing in Virginia who formerly or currently own(ed) or leased one or more 2023 BMW X1 vehicles.[4]

56.     The Subclass is defined as:

All persons in Virginia who formerly or currently own(ed) or leased one or more 2023 BMW X1 vehicles with a Rollaway Defect who received personal property tax relief under Virginia law for their vehicle(s).[5]

57.     Plaintiff reserves the right to amend or modify the Class and Subclass definitions after he has had an opportunity to conduct discovery.

58.     <u>Numerosity</u>:  Fed. R. Civ. P. 23(a)(1). The Class and Subclass are so numerous that the joinder of all members is unfeasible and not practicable. While the precise number of Class and Subclass Members has not been determined at this time, Plaintiff is informed and believes at least hundreds of individuals have purchased or leased the Class Vehicles in Virginia and hundreds of such individuals fall within the Subclass.

---

[4] Plaintiff reserves the right to amend or modify his Class and Subclass definitions to include or exclude model years of Vehicles experiencing the Rollaway Defect after they have an opportunity to conduct discovery related to changes made to the X1 and other BMW models in each model year, if any.
[5] These vehicles are referred to hereafter as "Subclass Vehicles."

59.    <u>Commonality</u>: Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class and Subclass, which predominate over any questions affecting only individual Class and Subclass Members. These common questions of law and fact include, without limitation:

a.    whether the Class Vehicles and their powertrains are defectively designed or manufactured such that they are not suitable for their intended use;

b.    whether the fact that the Class Vehicles suffer from the Rollaway Defect would be considered material to a reasonable consumer;

c.    whether, as a result of BMW's concealment or failure to disclose material facts, Plaintiff and Class Members acted to their detriment by purchasing Class Vehicles manufactured by BMW;

d.    whether BMW was aware of the Rollaway Defect;

e.    whether the Rollaway Defect constitutes an unreasonable safety risk;

f.    whether BMW breached express and/or implied warranties with respect to the Class Vehicles;

g.    whether BMW violated consumer protection laws for failing to notify the Rollaway Defect to Plaintiff and Class Members; and

h.    whether BMW has a duty to disclose the defective nature of the Class Vehicles and the Rollaway Defect to Plaintiff and Class Members.

60.    <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class and Subclass Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

61.    <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of BMW's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claim high and would therefore have no effective remedy at law. Because of the relatively small value of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for BMW's misconduct. Absent a class action, Class Members will continue to incur damages, and BMW's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## VII.    DEFENDANT KNEW OR SHOULD HAVE KNOWN OF THE ROLLAWAY DEFECT PRIOR TO PLAINTIFF'S PURCHASE

A.    <u>BMW Knew of, Acknowledged, and Yet Failed to Remedy the Rollaway Defect.</u>

62.    BMW knew or should have known about the Rollaway Defect well before Plaintiffs and Putative Class Members purchased their vehicles. Internal documents, including but not limited to meeting minutes, briefing materials, and dealership PowerPoints, demonstrate that BMW knew and had been made aware of the defect. BMW's internal communications and technical bulletins, intended for dealership service departments, acknowledge the existence of the defect and provide guidance on temporary and/or useless measures to address customer complaints.

63.    BMW failed to disclose this critical safety issue to the public, leaving consumers uninformed about the risks associated with their vehicles. BMW's decision to withhold this

information and not initiate a recall nor effective remedy reflects a deliberate choice to prioritize

its corporate interests over the safety and well-being of its customers and the public.

## CAUSES OF ACTION

### Count One—Breach of Express Warranty

U.C.C. § 2-313
(Va. Code § 8.2-313)
(Plaintiffs, individually, and on behalf of the Class)

64.     Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully

set forth herein.

65.     Plaintiffs bring this cause of action on behalf of the Class.

66.     Virginia has adopted the Uniform Commercial Code, including U.C.C. § 2-313,

which covers express warranties. Va. Code § 8.2-313. That section provides that "any affirmation

of fact or promise made by the seller to the buyer which relates to the goods and becomes part of

the basis of the bargain creates an express warranty that the goods shall conform to the affirmation

or promise." U.C.C. § 2-313(1)(a). Further, "[a]ny description of the goods which is made part of

the basis of the bargain creates an express warranty that the good shall conform to the description."

*Id*. § 2-313(1)(b).

67.     Plaintiffs and Class Members are "buyers" within the meaning of each applicable

warranty statute.

68.     The Class Vehicles are "goods" within the meaning of each applicable warranty

statute.

69.     BMW is a "manufacturer" and/or "seller" within the meaning of the warranty

statutes.

70.     Plaintiffs and Class Members bought or leased BMW vehicles equipped with

BMW's defective transmission, powertrain, software or whatever causes the Rollaway Defect.

71.     BMW marketed, sold, leased, and/or distributed the Class Vehicles, and Plaintiffs and Class Members purchased or leased the Class Vehicles.

72.     BMW made express warranties to Plaintiffs and Class members within the meaning of the warranty statutes.

73.     In the course of selling and leasing the Class Vehicles, BMW expressly "warrant[ed]" the Class Vehicles "against defects in material or workmanship to the first retail purchaser, and each subsequent purchaser."

74.     The Rollaway Defect is covered by a New Vehicle Limited Warranty.

75.     The New Vehicle Limited Warranty, as described, was made part of the basis of the bargain when Plaintiff and Class Members bought or leased the Class Vehicles.

76.     BMW breached its express warranties to repair defects in materials and workmanship of any part supplied by BMW. BMW has not repaired, and has been unwilling to reasonably repair, the Rollaway Defect.

77.     Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and because BMW has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

78.     Accordingly, recovery by Plaintiffs and the Class is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiff seeks all remedies as allowed by law.

79.     BMW was provided with notice of these issues by numerous customer complaints regarding the Rollaway Defect.

80.    To the extent such notice is required, BMW was provided notice by Class Members who brought their vehicles in for service at BMW's franchise dealers as to the Rollaway Defect, as those dealers forwarded the Class Members' concerns about the Rollaway Defect to BMW.

81.    Plaintiffs notified BMW directly of the Rollaway Defect present in their vehicle.

82.    Plaintiffs were not required to notify BMW of its breach and/or was not required to do so because affording BMW a reasonable opportunity to cure any breach of written warranty would have been futile.

83.    BMW was also on notice prior to purchase of the Defect from the complaints and service requests it received from Class Members, from repairs and/or replacements of the transmission or a component thereof, through internal reports acknowledging the Defect, and through other internal sources.

84.    Plaintiffs and other Class members are entitled to statutory damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their BMW vehicles, or the overpayment or diminution in value of their Class Vehicles.

85.    Plaintiffs and Class members are also entitled to costs and reasonable attorneys' fees.

### Count Two—Breach of Implied Warranty of Merchantability

U.C.C. § 2-314
(Va. Code § 8.2-314)
(Plaintiff, individually, and on behalf of the Class)

86.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

87.    Plaintiffs bring this cause of action individually and on behalf of the Class.

88.    Virginia has adopted the Uniform Commercial Code, including U.C.C. § 2-314, which covers the implied warranty of merchantability. Va. Code § 8.2-314 That section provides

that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." U.C.C. § 2-314(1).

89.    BMW is and was at all relevant times a merchant with respect to the Class Vehicles.

90.    BMW was and is in actual or constructive privity with Plaintiff and all Class Members.

a.    Plaintiffs have and continue to have sufficient direct dealings with BMW and/or its authorized dealers, franchisees, representatives, and agents to establish any required privity of contract. BMW's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, i.e., Plaintiffs and Class Members.

b.    Privity is not required to assert this claim because Plaintiffs and the Class Members are the intended consumers of the Class Vehicles and intended third-party beneficiaries of contracts between BMW and its dealers, franchisees, representatives, and agents.

c.    By extending express written warranties to end-user purchasers and lessees, BMW brought itself into privity with Plaintiff and all Class Members.

91.    Pursuant to Va. Code § 8.2-314, the Class Vehicles owned or leased by Plaintiffs and Class Members were defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public.  The Class Vehicles were subject to an implied warranty of merchantability, did not comply with the warranty in that they were defective at the

time of sale, and as a proximate result of the Defect the Plaintiff and Class Members sustained damages.

92.     The Class Vehicles left BMW's facilities and control with the Rollaway Defect caused by defective design incorporated into the manufacture of the Class Vehicles. The Rollaway Defect puts the consumers at a safety risk upon driving the Class Vehicles. At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the ordinary purposes for which such products are used, and that the product be acceptable in trade for the product description. This implied warranty of merchantability is part of the basis of the bargain between BMW, on the one hand, and Plaintiff and Class Members, on the other.

93.     Notwithstanding its duty, at the time of delivery BMW breached the implied warranty of merchantability in that the Class Vehicles powertrains were defective and posed a serious safety risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used, and failed to conform to the standard performance of like products used in the trade.

94.     BMW has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

95.     BMW knew, or should have known, that the Class Vehicles posed a safety risk and contained the Rollaway Defect, and knew, or should have known, of these breaches of implied warranties prior to sale or lease of the Class Vehicles to Plaintiff and Class Members.

96.     Plaintiffs and Class Members used the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties,

except as may have been excused or prevented by the conduct of BMW or by operation of law in light of BMW's unconscionable conduct.

97.    BMW had actual knowledge of, and received timely notice regarding, the Rollaway Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

98.    In addition, BMW received, on information and belief, numerous consumer complaints and other notices from customers advising of the Rollaway Defect in the Class Vehicles.

99.    By virtue of the conduct described herein and through this Complaint, BMW breached the implied warranty of merchantability.

100.    As a direct and proximate result of BMW's breaches of its implied warranties, Plaintiff bought the Class Vehicles without knowledge of the Rollaway Defect or their serious safety risks and purchased unsafe products which could not be used for their intended use.

101.    As a direct and proximate result of BMW's breach of its implied warranties, Plaintiff and Class Members have suffered economic damages, including loss attributable to the diminished value of their Class Vehicles, loss of use of their Class Vehicles and other tangible property, as well as the monies spent and to be spent to repair the Rollaway Defect and/or replacement costs for the purchase of a safe vehicle. BMW was unjustly enriched by keeping the profits for its unsafe products while never having to incur the cost of repair, replacement or a recall.

102.    Plaintiffs and other Class members are entitled to statutory damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their BMW vehicles, or the overpayment or diminution in value of their Class Vehicles.

103.    Plaintiffs and Class members are also entitled to costs and reasonable attorneys' fees.

## Count Three—Virginia Consumer Protection Act

(Va. Code §§ 59.1-196 *et seq.*)
(Plaintiff, individually, and on behalf of the Subclass)

104.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

105.    Plaintiffs bring this cause of action individually and on behalf of the Subclass.

106.    The sale and offering for sale of the Vehicle to Plaintiff is a "consumer transaction" under the Virginia Consumer Protection Act, Va. Code §§ 59.1-196 *et seq.* ("VCPA"). Va. Code § 59.1-198. Each sale and offering for sale of the Subclass Vehicles to the Subclass Members was a "consumer transaction" under the VCPA. *Id.*

107.    The Vehicle and Subclass Vehicles are "good[s]" under the VCPA. *Id.*

108.    At all times relevant, BMW was a supplier under the VCPA. *Id.*

109.    The warranty service and repairs of the Vehicle provided to Plaintiff through BMW's authorized dealerships constitute a "consumer transaction" under the VCPA. *Id.* The warranty service and repairs of the Subclass Vehicles provided to the Class Members through BMW's authorized dealerships constitute a "consumer transaction" under the VCPA. *Id.*

110.    The warranty service and repairs of the Vehicle and Class Vehicles through BMW's authorized dealerships are "services" under the VCPA. *Id.*

111.    Defendant's conduct, as described herein, took place within the state of Virginia and constitute prohibited practices in violation of the VCPA.

112.    Defendant violated the VCPA, in its sale and offering for sale of the Subclass Vehicles and warranty service and repairs of the Subclass Vehicles, on its own and by and through

its authorized dealerships, acting as authorized agents of Defendant, including but not limited to as follows:

  A. Misrepresenting that the Subclass Vehicles would operate with smooth and responsive acceleration and shifting with knowledge that the Subclass Vehicles would operate with abrupt, harsh, and unsafe acceleration and shifting;

  B. Misrepresenting that the Subclass Vehicles would operate with smooth and responsive shifting;

  C. Misrepresenting that the Subclass Vehicles would operate with a functional, non-defective, and safe automatic transmission system;

  D. Misrepresenting that the Subclass Vehicles would provide towing capacity and functionality in a non-defective and safe manner through smooth operation of the Transmission;

  E. Misrepresenting that the Transmission would not impair the use, safety, and/or market value of the Subclass Vehicles to Subclass Members;

  F. Misrepresenting that the abrupt, harsh, and unsafe acceleration and shifting of the Transmission was a "perceived" or "imagined" issue that did not impair the use, safety, and/or market value of the Subclass Vehicles to Subclass Members;

  G. Failing to adhere to and honor the terms of the warranty(ies) it provided for the Subclass Vehicles;

  H. Misrepresenting that service and repairs provided for the Subclass Vehicles were sufficient to remediate the abrupt, harsh, and unsafe shifting of the Transmission experienced by Subclass Members;

I.      Misrepresenting that the Subclass Vehicles were safe to operate notwithstanding abrupt, harsh, and unsafe shifting experienced by Subclass Members while operating the Subclass Vehicles;

J.      Advertising the Subclass Vehicles as operating with smooth and responsive acceleration and shifting with knowledge that the Subclass Vehicles would operate with abrupt, harsh, and unsafe acceleration and shifting; and

K.      Advertising and offering for sale the Subclass Vehicles without clearly and unequivocally indicating in its advertisements and offers for sale that the Subclass Vehicles were defective, irregulars, imperfects, and/or not first class.

113.    BMW's conduct, as detailed in this Complaint, violated the following subsections of the VCPA:

A.      Va. Code § 59.1-200(A)(5);

B.      Va. Code § 59.1-200(A)(6);

C.      Va. Code § 59.1-200(A)(7);

D.      Va. Code § 59.1-200(A)(8);

E.      Va. Code § 59.1-200(A)(10);

F.      Va. Code § 59.1-200(A)(14); and

G.      Va. Code § 59.1-200(A)(17).

114.    BMW knew of the Rollaway Defect prior to the first retail sale of the BMW X1 in Virginia. However, BMW allowed and continued to allow unsuspecting new and used car purchasers to buy or lease the Subclass Vehicles and allowed them to continue driving dangerous vehicles.

115.    BMW owed Plaintiff and the Subclass Members a duty to disclose the true safety and reliability of the Subclass Vehicles and/or the defective Transmissions installed in them before purchase because BMW: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiff and the Subclass Members; (c) made incomplete representations about the safety and reliability of the foregoing generally, while withholding material facts from Plaintiff and the Subclass Members that contradicted these representations; and (d) the VCPA expressly and specifically required Defendant to "clearly and unequivocally indicat[e] in [its] advertisement[s] and offer[s] for sale that the [BMW X1] [is] defective, . . . irregulars, imperfects, or 'not first class.'" Va. Code § 59.1-200(7).

116.    Defendant intended that Plaintiffs and other the Subclass Members would, in the course of their decision to expend monies in purchasing, leasing and/or repairing Subclass Vehicles, reasonably rely upon the misrepresentations, misleading characterizations, warranties material omissions and failures to disclose concerning the quality of the Subclass Vehicles and their Powertrains with respect to materials, workmanship, design and/or manufacture.

117.    BMW's failure to disclose and active concealment of the dangers and risks posed by the defective Powertrains in Subclass Vehicles were material to Plaintiffs and the Subclass Members, and any reasonable consumer would have considered those facts important in deciding whether to purchase or lease a Subclass Vehicle. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

118.    BMW's misrepresentations, concealment, omissions, failures to disclose, and other deceptive conduct were likely to deceive and cause misunderstanding and/or, in fact, caused Plaintiffs and other the Subclass Members to be deceived about the safety and reliability of the

Subclass Vehicles and its Transmissions, and that such Subclass Vehicles would be backed by both express and implied warranties that would, in fact, be honored by Defendant.

119.    Although BMW and its agents were aware that the Subclass Vehicles were equipped with a defective powertrains at the time that Plaintiff and the Subclass Members purchased or leased their Subclass Vehicles, BMW refused to provide a fix for these powertrains, free-of-charge in accord with the terms of its written warranty and to prevent the damages described herein.

120.    BMW's violations of the VCPA were intentional and willful because BMW engaged in a calculated campaign to protect its bottom line from damage caused by its mass marketing and sale of hundreds, if not thousands, of vehicles with defective, unsafe powertrains. BMW shifted the burden and costs of its failed transmission system onto consumers like Plaintiff and the Subclass Members instead of honoring its warranty obligations and purported commitment to safety.

121.    Plaintiffs    and    the    Subclass    Members    reasonably    relied    on    BMW's misrepresentations and omissions and expected that the Subclass Vehicles would not be equipped with a defective powertrain, such that it would render the Subclass Vehicles unsafe and not fit for their ordinary use. Further, Plaintiff and the Subclass Members reasonably expected BMW would honor its warranty obligations, as represented to them at the time they purchased or leased their Subclass Vehicles.

122.    The conduct of Defendant offends public policy, as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused avoidable and substantial injury to Subclass Vehicle owners and lessees (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

123.    Plaintiffs and the Subclass Members have been damaged as a proximate result of Defendant's violations of the VCPA and have suffered damages as a direct and proximate result of purchasing or leasing defective Subclass Vehicles.

124.    As a direct and proximate result of Defendant's violations of the VCPA, as set forth above, Plaintiffs and Subclass Members have suffered ascertainable loss of monies and property, caused by BMW's misrepresentations and failure to disclose material information and refusal to provide effective and free repairs pursuant to its warranties. Had they been aware of the defective Transmissions installed in the Subclass Vehicles, Plaintiffs and Subclass Members would not have purchased or leased them at all. Plaintiffs and Subclass Members did not receive the benefit of their bargain as a result of BMW's misconduct.

125.    BMW's violations of the VCPA were intentional, willful, and designed to deprive members of the consuming public, including Plaintiffs and Subclass Members, of fair and ethical consumer transactions.

126.    In the alternative, BMW's violations of the VCPA were non-willful and deprived members of the consuming public, including Plaintiffs and Subclass Members of fair and ethical consumer transactions.

127.    Plaintiffs and the Subclass Members are therefore entitled to relief, pursuant to Va. Code § 59.1-204(A), including actual damages, or alternatively, for statutory damages, treble damages, and reasonable attorneys' fees and costs.

**Count Four—Violation of Virginia Motor Vehicle Warranty Enforcement Act**

(Va. Code §§ 59.1-207.9, *et seq*.)
(Plaintiffs, individually)

128.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

129.    Plaintiffs bring this cause of action individually under the Virginia Motor Vehicle Warranty Enforcement Act, Va. Code §§ 59.1-207.9, *et seq*. ("Lemon Law").

130.    As individually defined in Va. Code § 59.1-207.11, *et seq*, Plaintiffs are "consumer[s]," BMW is a "manufacturer," the vehicle is a "motor vehicle," and the various defects in the vehicle constitute "nonconformities," "serious safety defects," and "significant impairments."

131.    BMW and its agents have failed to correct nonconformities after a reasonable number of repair attempts, which has impaired the use, safety, and market value of Plaintiff's vehicles.

132.    Defendant BMW has refused the Plaintiffs' demand for all damages to which they are entitled under the Lemon Law, and its actions, therefore, are in violation of the Lemon Law, §§ 59.1-207.11, 207.13, and 207.14.

133.    As a consequence of BMW's violation of the Lemon Law, Plaintiffs have sustained damages recoverable pursuant to Va. Code §§ 59.1-207.11, 207.13, and 207.14 and will incur expert witness fees, attorney's fees and costs and expenses associated with this case.

134.    Plaintiffs are therefore entitled to relief, pursuant to Va. Code §§ 59.1-207.11, 207.13, and 207.14, including damages, expert witness fees, and reasonable attorneys' fees and costs.

## **REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class and Subclass proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against BMW, as follows:

a.  Declaring that this action is a proper class action, certifying the Class and Subclass as requested herein, designating Plaintiff as Class and Subclass Representative and appointing the undersigned counsel as Class Counsel;

b.  Ordering BMW to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiffs and the other members of the Class and Subclass;

c.  Ordering BMW to pay treble damages, as allowable by the VCPA, to Plaintiffs and the other members of the Class and Subclass;

d.  Ordering BMW to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the other members of the Class and Subclass;

e.  Awarding injunctive relief as permitted by law or equity, including enjoining BMW from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective recall campaign;

f.  Ordering BMW to pay attorneys' fees and litigation costs incurred by Plaintiff for the benefit of the Class and Subclass;

g.  Ordering BMW to pay attorneys' fees, expert witness fees, and litigation costs incurred by Plaintiff in pursuing their individual claim.

h.  Ordering BMW to pay both pre- and post-judgment interest on any amounts awarded; and

i.  Ordering such other and further relief as may be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, individually and all others similarly situated, hereby demand a trial by jury as to all matters so triable.

Dated:  August 27, 2024                    Respectfully submitted,

                                           **LAURA BERL**
                                           **SETH BERL**

                                           By_____*/s/ Drew D. Sarrett*_____
                                           Drew D. Sarrett, VSB #81658
                                           **CONSUMER LITIGATION ASSOCIATES, P.C.**
                                           626 E. Broad Street, Suite 300
                                           Richmond, Virginia 23219
                                           Phone: (804) 905-9900
                                           Facsimile: (757) 930-3662
                                           Email: drew@clalegal.com

                                           Leonard A. Bennett, VSB #37523
                                           Craig C. Marchiando, VSB #89736
                                           John Maravalli, VSB #99000
                                           **CONSUMER LITIGATION ASSOCIATES, P.C.**
                                           763 J. Clyde Morris Blvd., Ste. 1-A
                                           Newport News, VA  23601
                                           Telephone: (757) 930-3660
                                           Facsimile: (757) 930-3662
                                           Email:  lenbennett@clalegal.com
                                           Email:  craig@clalegal.com
                                           Email: john@clalegal.com

                                           *Attorneys for Plaintiff and the Proposed Class*