Case 3:24-cv-00066-NKM-JCH   Document 52   Filed 08/29/25   Page 1 of 18
Pageid#: 843

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
August 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| LAURA BERL AND SETH BERL, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> *Plaintiffs,* <br><br> v. <br><br> BMW OF NORTH AMERICA, LLC, <br><br> *Defendant.* | CASE NO. 3:24-cv-00066 <br><br> OPINION <br><br> JUDGE NORMAN K. MOON |

Plaintiffs Laura and Seth Berl sue BMW of North America ("BMW") after experiencing a "rollaway defect" in their newly purchased BMW X1. They allege the defect compromised their safety, caused them pecuniary and emotional harm, was unresolved by several rounds of manufacturer maintenance, and is common to potentially hundreds of similarly situated consumers who have purchased or leased a BMW X1 in the Commonwealth of Virginia. Based upon these allegations, Plaintiffs bring four causes of action:

(i)   breach of express warranty (Count 1);

(ii)  breach of implied warranty of merchantability (Count II);

(iii) violation of the Virginia Consumer Protection Act ("VCPA"), Va. Code §§ 59.1-196 *et seq.* (Count III); and

(iv)  violation of the Virginia Motor Vehicle Warranty Enforcement Act, Va. Code §§ 59.1-207.9, *et seq.* (Count IV).

Plaintiffs bring these claims as a class action, except for Count IV, which they bring individually. *See* Dkt. 13 (First Amended Complaint). As relief, they seek monetary damages (actual, treble,

and statutory), injunctive relief, and certification of the proposed class, among other requests. Dkt. 13 at 43.[1]

BMW moves to dismiss Plaintiffs' complaint for failure to state a claim, making the following two arguments. First, Plaintiffs' VCPA claim fails because the complaint does not plead several elemental facts and/or does not plead them with sufficient particularity, such as: whether BMW knew of the alleged defect, whether BMW made misrepresentations about the defect, and whether Plaintiffs relied on any such misrepresentation. Second, Plaintiffs' class allegations should be struck because (i) VCPA claims cannot be brought as class claims, and (ii) the class allegations are too superficial and individualized for class adjudication. *See* Dkt. 18 (motion); Dkt. 19 (brief).

Upon consideration of the record and the applicable law, the Court concludes that BMW's arguments are without merit. Therefore, the Court will **DENY** BMW's motion to dismiss, Dkt. 18, in an accompanying order.

## I. Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation

---

[1] Throughout this Opinion, docket entry page numbers refer to the ECF headers at the top of each page.

to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

## II. Background

Plaintiffs in this matter are Seth and Laura Berl, a married couple living in Charlottesville, Virginia. Dkt. 13 at 7. BMW is a limited liability company with its place of incorporation and principal place of business in New Jersey. Dkt. 13 at 8. Through its various entities, BMW "designs, manufactures, advertises, markets, distributes, and sells and/or leases its vehicles in this District and many other locations in the United States and worldwide." *Id.* Plaintiffs plead federal jurisdiction under the minimal diversity provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), which requires only that the matter in controversy exceed $5,000,000 and any member of Plaintiffs' class is a citizen of a state different from BMW.

### A. The Berls Seek to Purchase New Vehicle

In 2023, Seth Berl sought to purchase a "a safe and reliable vehicle for his newlywed wife, Laura." Dkt. 13 at 13. The couple previously drove a "highly reliable 7-year-old Subaru Crosstrek—which had no issues beyond routine maintenance." *Id.* In May and June of 2023, "Seth and Laura visited BMW of Charlottesville on numerous occasions to research and evaluate

3

replacement options." *Id.* at 14.

During these visits, the Berls met with Malik Salisbury, a sales employee, and Rick Martens, a sales manager. *Id*. The Berls looked at a BMW X1 at the dealership that had already been sold, and they allege that Salisbury informed them of the X1's features, including safety features. Dkt. 13 at 14-15. The Berls also looked online at the X1's safety features. *Id*. Salisbury researched the "Driver's Assistance Professional package" and informed the Berls of the package's features. *Id.* The Berls allege that they "painstakingly reviewed content on the BMW website, reviews of the X1 in such publications as Consumer Reports and Car & Driver, compared safety features, and test drove different vehicle makes and models." *Id.* at 15.

The Berls further allege that "[d]uring their visits to BMW of Charlottesville and the BMW website," they "repeatedly received assurances about the industry leading safety capabilities of BMW generally and the X1 specifically." Dkt. 13 at 15. They allege that they "reasonably accepted these assurances as true and relied upon them in ultimately deciding to purchase an X1." *Id.* The Berls also allege that they relied on "BMW's advertisements, promotional materials, and website representations which emphasized the 2023 BMW X1 xDrive28i as a high-quality vehicle with advanced safety features, including the Driver's Assistance Professional package." *Id.* at 13. Indeed, the Berls contend that "BMW's materials and dealership staff portrayed the vehicle as offering superior safety and reliability, consistent with BMW's reputation for excellence." *Id.*

In September 2023, the Berls finalized their purchase of a 2023 BMW X1 at the Charlottesville dealership and took possession of their new vehicle. Dkt. 13 at 16. However, "[j]ust three days after taking delivery of the vehicle," Seth and Laura experienced the so-called rollaway defect for the first time. Dkt. 13 at 16.

4

### B. The Berls Experience Rollaway Defect

The "rollaway defect," according to Plaintiffs' complaint, is a "common design and/or manufacturing defect in BMW powertrains" that "manifests through various hazardous symptoms, which significantly impair [the vehicle's] safety and operability." Dkt. 13 at 3. "One of the primary symptoms of the Rollaway Defect is a pronounced delay in acceleration." *Id*. "Specifically, from a dead stop, there is a delay of 2 to 7 seconds when the gas pedal is pressed in any gear, including reverse. This delay severely impairs the driver's ability to control the vehicle's, acceleration, speed, and responsiveness." *Id.* at 3-4. "Such impairment is particularly dangerous in situations requiring immediate acceleration, such as parking, merging into traffic, navigating intersections, or avoiding sudden obstacles." *Id.* at 4. Other manifestations of the rollaway defect include the vehicle's tendency to "jerk forward unexpectedly" and to "roll forward or backward randomly while in gear and awaiting clutch engagement." *Id.*

The Berls allege that, at the time of their purchase, BMW "was aware that the 2023 BMW X1 xDrive28i suffered from the Rollaway Defect." Dkt. 13 at 14. They contend that "[i]nternal documents, including but not limited to meeting minutes, briefing materials, and dealership PowerPoints, demonstrate that BMW knew and had been made aware of the defect." *Id.* at 23. "BMW's internal communications and technical bulletins, intended for dealership service departments, acknowledge the existence of the defect identified as 'B48 Transversal: Unfavorable Drive-Off Behavior' and provide guidance on temporary and/or useless measures to address customer complaints." Dkt. 13 at 23.

The Berls allege that "[d]espite this knowledge," BMW and its sales representatives "failed to disclose the defect or its risks" during the purchase process. Dkt. 13 at 14. "Neither the promotional materials, advertisements, nor the dealership staff mentioned the Rollaway Defect

5

or the safety concerns it created." *Id.*

### C. The Berls Seek Solution Through Dealership Service

On September 19, 2023, with 30 miles on the odometer, Seth brought the vehicle to BMW of Charlottesville for service. Dkt. 13 at 16. The dealership "performed a software update and recalibrated the dual clutch system," but these efforts "failed to resolve the Rollaway Defect." *Id*. Over the next several months, the Berls allege that they "continued to experience rollaway episodes at a rate of about 2-3 times per week, posing a significant safety risk." *Id.* The Berls twice more sought to address the issue through maintenance and upgrades at the dealership, but the services were not successful. On the third visit, the Berls provided "both sets of keys and express[ed] their intention to no longer take or retain possession of the defective vehicle." *Id.* at 17. The vehicle "has been at the dealership for over 240 days and remains at the dealership as of the filing of this complaint." *Id*.

The Berls "expected BMW to either refund them completely or provide a different model replacement vehicle with the same or better safety features." Dkt. 13 at 17. They contend that they "have not received the benefit of their bargain," and instead, the defective vehicle "has caused them significant distress, inconvenience, and safety concerns." *Id*. "They continue to await a resolution from BMW that addresses the financial and emotional burdens imposed by the unsafe vehicle and BMW's inaction." *Id.*

### III. Discussion

BMW seeks dismissal of Plaintiffs' complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), based on two arguments relevant here. First, BMW contends that Plaintiffs' VCPA claim fails because the Berls do not plead several elemental facts and/or do not plead them with sufficient particularity, such as: whether BMW knew of the alleged defect, whether

6

BMW made misrepresentations about the defect, and whether Plaintiffs relied on any such misrepresentation. Second, BMW argues that Plaintiffs' class allegations should be dismissed and struck because (i) VCPA claims cannot be brought as class claims, and (ii) the allegations are too individualized for class adjudication.

Upon consideration of the record and the applicable law, the Court concludes that BMW's motion must be dismissed because its arguments are without merit.

### A. VCPA Claims

BMW first argues that Plaintiffs' VCPA claim fails because the complaint does not sufficiently plead certain statutory elements (pre-sale knowledge of defect, misrepresentation, and detrimental reliance) and/or plead fraud allegations with sufficient particularity.

The VCPA generally prohibits "misrepresenting goods or services." *Myers v. Lee*, 2010 WL 2757115, at *5 (E.D. Va. July 12, 2010).[2] It authorizes "actual damages" as a remedy for violation of its provisions: "Any person who suffers loss as the result of a violation of this chapter shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater." Va. Code § 59.1–204(A). And "[u]nder the Supreme Court of Virginia's definition of 'actual damages,'" the VCPA "authorize[s] recovery for emotional distress" as well as pecuniary harm. *Barnette v. Brook Rd., Inc.*, 429 F. Supp. 2d 741, 752 (E.D. Va. 2006).

To properly state a cause of action under the VCPA, a plaintiff must allege (1) fraud, (2) by a supplier, (3) in a consumer transaction." *Hamilton v. Boddie-Noell Enters., Inc.*, 88 F. Supp. 3d 588, 591 (W.D. Va. 2015) (quoting *Nahigian v. Juno Loudoun*, LLC, 684 F. Supp. 2d 731,

---

[2] Specifically, as relevant here, the VCPA makes it unlawful for a supplier to misrepresent that its goods "have certain … characteristics," Va. Code § 59.1–200(5), or are "of a particular standard, quality, [or] grade," *id.* at § 59.1–200(6); to advertise or offer for sale goods that are "defective," *id.* at § 59.1–200(7), or "with intent not to sell them as advertised," *id.* at § 59.1–200(8). The VCPA also prohibits using "any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction," *id.* at § 59.1–200(14).

7

741 (E.D. Va. 2010)). "As a claim sounding in fraud, Rule 9(b)'s particularity requirements apply to the VCPA." *Myers*, 2010 WL 2757115 at *6 (quoting *Nahigian*, 684 F. Supp. 2d at 741). Rule 9(b) requires that a party alleging fraud "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To satisfy the heightened pleading standard of Rule 9(b), a plaintiff must state with particularity 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Beasley v. FV–I, Inc.*, 2013 WL 1192018, at *3 (E.D. Va. Mar. 21, 2013) (quoting *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 120 (4th Cir. 2009), *rev'd on other grounds*, *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)). Failure to comply with Rule 9(b)'s pleading standard is treated as a failure to state a claim under Rule 12(b)(6). *Id.* (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir.1999)).

Here, the complaint sufficiently pleads facts which go to the elements of a VCPA claim, and the complaint pleads fraud allegations with sufficient particularity under Rule 9(b).

### 1. Allegations of Pre-Sale Knowledge

For BMW to have made a fraudulent misrepresentation regarding the alleged defect, it would need to have been aware of the defect. BMW argues that the complaint fails to plead this logical step, Dkt. 19 at 18, but the Court finds otherwise. The complaint plainly alleges that at the time of the Berls' purchase, BMW was "aware that the 2023 BMW X1 xDrive28i suffered from the Rollaway Defect." Dkt. 13 at 14. The complaint avers that "[i]nternal documents, including but not limited to meeting minutes, briefing materials, and dealership PowerPoints, demonstrate that BMW knew and had been made aware of the defect." Dkt. 13 at 23. Indeed, "BMW's internal communications and technical bulletins, intended for dealership service departments, acknowledge the existence of the defect" and sought to provide guidance on

8

addressing it. Dkt. 13 at 23. Given these plausible allegations, the complaint sufficiently alleges that BMW had pre-sale knowledge of the rollaway defect.

### 2. Allegations of Misrepresentation and Reliance

"Virginia courts have consistently held that reliance is required to establish a VCPA claim." *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d, 651, 658 (W.D. Va. 2013) (citing *Adardour v. Am. Settlements Inc.*, 2009 WL 1971458, at *3 (E.D. Va. July 2, 2009) (collecting cases); *Cooper v. GGGR Inv., LLC*, 334 B.R. 179, 189 (E.D. Va. 2005) ("In sum, . . . [the VCPA] requires that a private VCPA claimant show that he relied on the alleged misrepresentations claimed to constitute the prohibited practice, and thus that his loss was caused by the prohibited practice."). Given this requirement, BMW argues that "Plaintiffs have failed to adequately plead reliance on any misrepresentations or omissions that BMW NA made before they purchased their vehicle." Dkt. 19 at 13. It argues that while Plaintiffs make some allegations regarding the Berls' review of safety features, "Plaintiffs don't identify which materials Seth relied on that omitted information, what those materials said, or when Seth relied on them, as the VCPA requires." Dkt. 25 at 14. In other words, BMW argues that Plaintiffs' allegations are too vague, but the Court rejects this argument because the Rule 9(b) pleading requirements are not as stringent as BMW contends.

In *Scott v. GMAC Mortgage*, LLC, 2010 WL 3340518 (W.D. Va. Aug. 25, 2010), the court, relying on the decision in *Nahigian*, found that the plaintiffs had plead their case with sufficient particularity to satisfy Rule 9(b) and to allow the defendant to raise a defense. *Scott*, 2010 WL 3340518, at *8. The court held that it was not necessary to name the specific representative of the defendant that made the misrepresentations, nor the precise location, date, and hour at which defendant allegedly made the misrepresentations. *Id*. Instead, it was sufficient

9

to merely identify the defendant corporate entity and provide general allegations of when and where the misrepresentations were made.

Here, Plaintiffs present a similar case to *Scott*—and in fact hold an improved position relative to the plaintiffs in *Scott*. Plaintiffs allege that in May and June of 2023, they visited BMW of Charlottesville "on numerous occasions to research and evaluate replacement options" and that during these visits, they met with Malik Salisbury, a sales employee, and Rick Martens, a sales manager. Dkt. 13 at 14-15. Salisbury "informed them of the X1's features, including safety features" such as the "Driver's Assistance Professional package" and the features included in that package. *Id.* Plaintiffs allege that they "repeatedly received assurances" during these visits with Salisbury and Martens "about the industry leading safety capabilities of BMW generally and the X1 specifically." *Id.* Plaintiffs allege that they "accepted these assurances as true and relied upon them in ultimately deciding to purchase an X1." *Id.*

With these allegations appearing on the face of the complaint, it is hard to see how Plaintiffs failed to allege reliance. Plaintiffs identify the time, place, and people involved in the alleged misrepresentation, far more than the plaintiffs in *Scott*. And they directly state that they relied upon those interactions. True enough, Plaintiffs do not allege that BMW or its agents made an affirmative misrepresentation, i.e., a statement that turned out to be false. But *omissions* count as misrepresentations, too. Indeed, Rule 9(b)'s pleading requirements are less strict when dealing with concealment or omission, since proving an omission is akin to proving a negative. *Fravel*, 973 F. Supp. 2d at 656-57. For example, in *Doll v. Ford Motor Co.*, the court, finding that in cases involving omissions Rule 9(b)'s particularity requirement is relaxed, denied a similar motion to dismiss. 814 F. Supp. 2d 526, 538-39 (D. Md. 2011). The court found that the circumstances constituting fraudulent concealment were alleged with sufficient particularity

10

where the plaintiff had asserted that the defendant became aware of a defect through National Highway Traffic Safety Administration investigations, customer complaints, and websites such as Edmunds.com, and consciously concealed this information from the plaintiff purchasers. *Id*.

Here, Plaintiffs allege BMW was aware, at the time of the Berls' purchase, that the 2023 BMW X1 suffered from the Rollaway Defect. Dkt. 13 at 13-14 (stating that "[i]nternal documents, including but not limited to meeting minutes, briefing materials, and dealership PowerPoints, demonstrate that BMW knew and had been made aware of the defect"). Yet, Plaintiffs allege that none of this was disclosed to them in their recurring conversations with BMW about the safety features of the 2023 X1. Given these allegations, Plaintiffs have pled sufficient facts to show that that BMW was (i) aware of certain defects in the XI at the time of the Berls' purchase and that (ii) its agents failed to disclose this defect despite the Berls directly inquiring about the vehicle's reputation and features for safety. The Berls do not allege that BMW or its agent <u>consciously</u> concealed the defect, as in *Scott*, but at the motion to dismiss stage, it is sufficient that Plaintiffs have pled facts which plausibly support their claim for relief, i.e., that BMW committed a fraudulent misrepresentation by omission, upon which they relied. *See Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260 (Va. 2014) (stating that while "[t]he VCPA . . . requires proof . . . of reliance and damages," it does not "require the consumer to prove in every case that misrepresentations were made knowingly or with the intent to deceive").

### B.  Class Allegations

Next, BMW argues that Plaintiffs' class allegations should be struck because (i) VCPA claims cannot proceed as class actions as a matter of law and (ii) Plaintiffs' class claims are too individualized for class adjudication under Federal Rule of Civil Procedure 23. *See* Dkt. 19 at 23.

11

Determination of the first issue raises a complicated question of law regarding whether allowing VCPA class actions in federal court under Rule 23 would "enlarge or modify any substantive right" in violation of Virginia law and the Rules Enabling Act, 28 U.S.C. §2072(b). *See Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393, 423 (2010) (Stevens, J., concurring in plurality opinion) ("A federal rule . . . cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right."). Determination of the second issue, meanwhile, turns on the proper standard of review for motions to strike class allegations before discovery has occurred.

### 1. Whether Plaintiffs' VCPA Claims Can Proceed as Class Claims

The Rules Enabling Act provides that the Supreme Court of the United States may "prescribe general rules of practice and procedure" for cases in the United States district courts. 28 U.S.C. § 2072. However, such federal rules "shall not abridge, enlarge or modify any substantive right" of the states. *Id*. Where a federal rule potentially abridges, enlarges, or modifies a state law, courts must determine whether the state law is substantive or procedural. *Shady Grove*, 559 U.S. at 417 (Stevens, J., concurring). If the state law is procedural, the federal rule still governs. *Id.* at 418-19. But if the state law is substantive, the federal rule shall not apply and the state law prevails. *Id.*

This inquiry can be challenging and "requires careful interpretation of the state and federal provisions at issue, since '[t]he line between procedural and substantive law is hazy.'" *Shady Grove*, 559 U.S. at 419 (Stevens, J., concurring) (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 92 (1938) (Reed, J., concurring)). Courts must focus on "the nature of the state law that is being displaced by a federal rule." *Id*. at 419. The inquiry is less about "whether the state law

12

at issue takes the form of what is traditionally described as substantive or procedural," and more about "whether the state law actually is part of a State's framework of substantive rights or remedies." *Id*. "A state procedural rule, though undeniably 'procedural' in the ordinary sense of the term, may exist to influence substantive outcomes and may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy." *Id*. at 419-20 (internal citations and quotations omitted). "When a State chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice." *Id*. at 420.

"[H]owever, the bar for finding an Enabling Act problem is a high one. The mere fact that a state law is designed as a procedural rule suggests it reflects a judgment about how state courts ought to operate and not a judgment about the scope of state-created rights and remedies." *Id*. at 432. "The Enabling Act's limitation does not mean that federal rules cannot displace state policy judgments; it means only that federal rules cannot displace a State's definition of its own rights or remedies." *Id*. at 418.

Here, BMW argues that a conflict exists between (i) Federal Rule of Civil Procedure 23, which governs class actions, and (ii) Virginia's non-recognition of class actions—both as a general jurisprudential matter and as a statutory matter under the VCPA. *See* Dkt. 19 at 23.

Generally, "Virginia jurisprudence does not recognize class actions." *Casey v. Merck & Co., Inc.*, 722 S.E.2d 842, 846 (Va. 2012).[3] The VCPA does not explicitly address whether class enforcement of its terms is available, though the statute's civil enforcement provision is titled "*[i]ndividual* action for damages or penalty." *See* Va. Code § 59.1-204 (emphasis added) ("Any

---

[3] Virginia does, however, provide for multi-claimant litigation through Virginia Code § 8.01-267.1, which allows a Circuit Court to join civil actions brought by six or more plaintiffs which involve common questions of law or fact. *See* Va. Code § 8.01-267.1.

person who suffers loss as the result of a violation of this chapter shall be entitled to initiate an action to recover actual damages."). Meanwhile, Rule 23 provides that "[a] class action may be maintained" for any civil action, assuming certain prescribed preconditions are satisfied. Fed. R. Civ. P. 23(b).

Several district courts outside of this circuit have ruled on this issue, creating a split of authority. The majority of courts have allowed VCPA claims to proceed as class claims—though these courts have relied on varied grounds for their conclusion.[4] As a whole, the thrust of these decisions is that the availability of class adjudication under the VCPA is a procedural question in the Commonwealth, not a substantive one, since no term within Virginia's code expressly prohibits class litigation.

On the other hand, the minority of courts have found that VCPA claims cannot proceed in class litigation—but again the reasoning employed is inconsistent and, notably, does not engage in *Shady Grove* analysis. *See, e.g.*, *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Prac. Litig.*, 2022 WL 551221, at *19 (E.D. Mich. Feb. 23, 2022), *aff'd*, 65 F.4th 851 (6th Cir. 2023) (concluding that VCPA class claims "fail as a result of [the] statutory class-action bar[]"); *Am. Online, Inc. v. Superior Ct.*, 90 Cal. App. 4th 1, 17, 108 Cal.Rptr.2d 699 (2001), *as modified* (July 10, 2001) (noting the "absence of any provision in the VCPA that allows suits under the Act to proceed as class actions" and that "class action relief is not

---

[4] *See, e.g.*, *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 574 (M.D. Tenn. 2020) (citing opinion of Justice Scalia, though Justice Scalia's opinion was not the narrowest ruling in the plurality opinion, and finding that Rule 23 "preempt[s]" the VCPA); *In re Hardieplank Fiber Cement Siding Litig.*, 2013 WL 3717743 (D. Minn. 2013) (concluding that that the lack of a class action under the VCPA and Virginia law is a procedural matter, "rather than a substantive law defining the types of rights and remedies available under the VCPA itself"); *In re Myford Touch Consumer Lit.*, 2016 WL 7734558, at *26 (N.D. Cal. Sept. 14, 2016) ("Because Virginia's class action ban is not part of the VCPA, and applies outside the context of the VCPA, it is procedural rather than substantive, and is precluded by Rule 23."); *Milisits v. FCA US LLC*, 2021 WL 3145704, at *12 (E.D. Mich. 2021) ("This Court joins the other federal district courts that have . . . allowed plaintiffs to pursue class claims under the VCPA.").

14

generally available in Virginia in actions at law"); *Allen v. ConAgra Foods, Inc.*, 331 F.R.D. 641, 667-68 (N.D. Cal. 2019) (noting that "class actions are not generally allowed in Virginia" and that "it would be inappropriate to certify a class to proceed under Virginia law in this Court when Virginia courts would not allow the same").

None of the above decisions are binding, though some are more persuasive than others. First, we note that the courts which have rejected VCPA class claims (see the decisions cited in the preceding paragraph) inordinately and inappropriately rely on the fact that the VCPA's enforcement provision is **titled** "[i]ndividual action for damages." Titles are not part of the statutory code and do not have the force of law. *Butler v. Fairfax Cty. Sch. Bd.*, 291 Va. 32, 38 (2015) (stating that "the headline of a Code section is not part of the statutory language and does not have the force of law"). Thus, it is incorrect to state that the VCPA contains a "statutory class-action bar[]" based solely on the language of the title. Second, and relatedly, the VCPA is often compared to other states' statutes which **do** contain explicit bars;[5] yet this comparison is inapposite because such prohibitions in other statutes appear in the statutes' substantive terms—not just the titles. *See, e.g.*, Ala. Code § 8-19-10(f) ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class."); Tenn. Code § 47-18-109(g) ("No class action lawsuit may be brought to recover damages for an unfair or deceptive act or practice declared to be unlawful by this part."). To compare the VCPA to other statutes which *expressly* prohibit class actions only supports the possibility that class litigation may be available under the VCPA.

Indeed, the purported conflict here between Rule 23 and the VCPA is scarcely a conflict at all. We must focus on "the nature of the state law that is being displaced by a federal rule."

---

[5] *See In re Ford Motor Co. F-150*, 2022 WL 551221, at *19 (citing long list of state statutes which purportedly ban class actions, including the VCPA).

15

*Shady Grove,* 559 U.S. at 419 (Stevens, J., concurring). But the state law that is being "displaced" here is the **absence** of a state law. True enough, "Virginia jurisprudence does not recognize class actions," *Casey*, 722 S.E.2d at 846, but that simply means Virginia's **state** courts and jurists will not entertain class actions. This Court is removed from that principle.

We also must focus on whether allowing class actions would "enlarge" or "modify" the VCPA's substantive rights or remedies—i.e., whether the lack of class actions "is part of [Virginia's] framework of substantive rights or remedies." *Shady Grove,* 559 U.S. at 419. This is a closer call, since it is arguable that Virginia's non-provision of class litigation is reflective of the state's intended remedial scheme. But again, "[t]he Enabling Act's limitation does not mean that federal rules cannot displace state policy judgments; it means only that federal rules cannot displace a State's definition of its own rights or remedies." *Id*. at 418. Here, Virginia's non-provision of class actions tends more toward a procedural and policy judgment "about how state courts ought to operate," rather than "a judgment about the scope of state-created rights and remedies." *Id*. at 432. The VCPA, enacted in 1977 and amended as recently as 2025, exists against the backdrop of extant federal diversity jurisdiction and Rule 23. The lack of an express ban in its terms detracts from the concern that federal class enforcement will improperly enlarge or modify Virginia's substantive rights. Instead, federal class enforcement of the VCPA merely provides an additional forum and procedural scheme that Virginia need not provide in its state courts.

Accordingly, we must reject BMW's argument that Plaintiffs' VCPA claims cannot proceed as class claims due to a purported "class action ban" in Virginia.

### 2. Whether Plaintiffs' Class Claims Fail Rule 23

BMW last contends that Plaintiffs' class allegations are so individualized and superficial

that they fail the requirements of Rule 23(a) and must be struck on the pleadings alone. Dkt. 18 at 24–27. At this stage of litigation, we disagree.

A party seeking class certification bears the burden of proving its entitlement to certification under Rule 23; to do so, it "must do more than plead compliance with the [] Rule 23 requirements." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard."). However, "[i]n deciding whether the plaintiff has met the burden imposed by Rule 23 . . . the trial court usually should consider more information than the bare allegations of the complaint." *Goodman v. Schlesinger*, 584 F.2d 1325, 1331 (4th Cir. 1978) (cleaned up). While "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, [] sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 160 (1982). For example, courts may, and often do, "permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential as a part of the vital management role which the trial judge must exercise in class actions to assure that they are both meaningful and manageable." *Dr. v. Seaboard Coast Line R. Co.*, 540 F.2d 699, 707 (4th Cir. 1976).

Here, it is not apparent or "plain" from the face of the complaint whether a class action can or cannot be maintained in this litigation. Thus, under the authorities outlined above, it would be premature to strike Plaintiffs' class allegations without the benefit of discovery or an evidentiary hearing on the certification question.

17

### IV.    Conclusion

For the reasons stated above, the Court will **DENY** BMW's motion to dismiss, Dkt. 18, in an accompanying order.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered this 29th day of August, 2025.

*[Signature]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE